UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL WALKER                                              CIVIL ACTION

VERSUS                                                      NUMBER: 15-0645

PIONEER PRODUCTION                                          SECTION: "A"(5)
SERVICES, INC., ET AL.

**ORDER AND REASONS**

Before the Court is Plaintiff's, Michael Walker's ("Walker's"), Motion to Compel Defendants, Hornbeck Offshore Trinidad and Tobago, LLC and Hornbeck Offshore Operators, LLC (collectively "Hornbeck") to Respond to Interrogatories and Requests for Production. (Rec. doc. 35).[1]  Hornbeck has filed an opposition memorandum (rec. doc. 43) and Walker filed a reply brief.  (Rec. doc. 49).  The Court heard oral argument on the motion March 23, 2016. (Rec. doc. 50)

After thorough consideration of the memoranda, the exhibits attached thereto and the argument of counsel at the hearing, the Court denies the motion for the following reasons.

**I.      The Parties' Contentions**

This lawsuit arises from an alleged personal injury suffered by Walker while he was employed as a rigger by Defendant, Pioneer Production Services, Inc. ("Pioneer"), while working aboard a vessel owned and operated by Hornbeck.  Walker's claims in this case sound in negligence under the Jones Act against Pioneer and in general maritime law negligence and unseaworthiness against Hornbeck.

---

[1] While the title of the motion implies there are multiple interrogatories and requests for production in dispute, there is actually only one of each at issue here.

Through the present motion, Walker seeks responses to his Supplemental Interrogatory Number 1 and Supplemental Request for Production Number 5, which he propounded on Hornbeck on February 3, 2016. (Rec. doc. 35-1). It is appropriate to quote those related discovery requests and Hornbeck's responses to them here:

> **SUPPLEMENTAL INTERROGATORY NO. 1:**
> Please state your current rates of pay for the following job positions:
> - Qualified Member of the Engine Department-Oiler (QMED)
> - Chief Engineer
> - Relief Chief Engineer
> - 1st Assistant Engineer
> - 2nd Assistant Engineer
> - 3rd Assistant Engineer
>
> **ANSWER TO SUPPLEMENTAL INTERROGATORY NO. 1:**
> Hornbeck objects to Supplemental Interrogatory No. 1 as overly broad, and to the extent it calls for commercially sensitive, proprietary information. Hornbeck further objects to Supplemental Interrogatory No. 1 insofar as it seeks information that is entirely irrelevant to any issue in this case and is not proportional to the needs of the case. Plaintiff is not and never was employed by Hornbeck, nor did he ever work in any of the positions to which Supplemental Interrogatory No. 1 is directed. Moreover, the current rates of pay for Hornbeck employees has no relevance to this case involving an alleged incident that occurred more than a year and a half ago given the unprecedented current market downturn affecting Hornbeck's business and employment conditions. Further, Plaintiff has never held, and does not currently hold, any credential issued by the United States Coast Guard, such that he would even be qualified to work in any of the positions listed in Supplemental Interrogatory No. 1.
> Hornbeck further objects to any additional discovery of any type directed to the issue of Hornbeck pay rates as irrelevant to any issue in this case; and disproportionate to the needs of the case as considering the unimportance of such discovery to any issue at stake, the unimportance of such discovery to resolution of any issues, and the burden and expense of such discovery outweighing its likely benefit.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 5:**
Please produce a copy of all documents upon which you rely in your Answer to Supplemental Interrogatory No. 1.

**SUPPLEMENTAL RESPONSE TO REQUEST NO. 5:**
See Hornbeck's Answer to Supplemental Interrogatory No. 1.

(*Id.* at pp. 2-3).

In support of his motion to compel responses to these requests, Walker claims he is entitled to the requested information to support his claim for lost earning capacity. His arguments in this regard are aptly summed up in the following statement from his memorandum in support of the motion:

> Although plaintiff was employed as a rigger at the time of the incident, evidence in the case indicates that plaintiff had aspirations to become an engineer, was receiving special training from Hornbeck personnel in order to do so, and had the requisite skills and ambition to achieve upward mobility to an Engineer position.

(*Id.* at p. 3).

As evidence in support of these statements, Walker points to what he says is a letter of recommendation[2] written by a former master of the Hornbeck vessel to which Walker was assigned, Daniel Freniere ("Freniere") (rec. doc. 35-6), and to the deposition testimony of the captain of that same vessel at the time of Walker's accident, Charles Fromenthal ("Fromenthal"). (Rec. doc. 35-7).

The letter from Freniere is brief, and reads in pertinent part:

> To whom it may concern;
>
> As Master of the HOS Cornerstone it has been my pleasure to allow Mr. Michael Walker to accompany my Chief Engineer and

---

[2] The letter, which is neither authenticated nor objected to, is not addressed or directed to any person or entity in particular. It is not necessary for the Court to determine the letter's admissibility, which is assumed for present purposes.

3

>his staff to the Engine Room for some training. Mike has expressed an interest in becoming a QMED and of course has designs to continue training beyond and one day be an Engineer. He has been trained in watch standing as required for an OIERW. He has in the company of qualified members of the Engine Room observed how to do Day Tank Fuel Oil Transfers, Gauge reading as required, and generally assist as needed in other routine tasks. Mike has shown and continues to show the interest, has a clear head on his shoulders and asks the right questions. I would be pleased as would my Engineering Staff to consider Mike sound of body and mind and the right kind of character to pursue his desired technical career. Please feel free to call me on the vessel or email me for further recommendations or answers to any questions about his ability or resolve.

>                                                            (Rec. doc. 35-6).

In the deposition testimony relied upon by Walker, Fromenthal confirms that Walker was one of "a couple of guys that were trying to show interest" and that Freniere had in fact received permission to allow Walker and others into the engine room, because Pioneer employees (of which Walker was one) were not allowed in the engine room. (Rec. doc. 35-7 at pp. 9-11). In this regard, Fromenthal testified:

>It is my understanding that there was an email that came back, possibly, or it was a phone conversation, I am thinking it might have been a phone conversation with Mr. Freniere and the Pioneer office manager or somebody that said yes, they can go as long as they are supervised and as long as they did not perform anything that would jeopardize the vessel or themselves. They could basically observe.

>                                                            (*Id.* at pp. 10-11).

As for Walker individually, Fromenthal testified that he didn't think Walker "wanted to be a rigger all of his life, so he was showing an interest in trying to learn or going through the steps of what it would take to become a mariner." (*Id.*).

4

Summing up the statements (sworn and unsworn) of these two witnesses, Walker argues:

> In light of this evidence, the information requested by plaintiff in the disputed discovery requests is highly relevant to the issue of plaintiff's earning capacity. Moreover, Hornbeck cannot reasonably argue that these requests create an undue burden that precludes it from answering the requests.

(Rec. doc. 35-1 at p. 4).

Responding to Walker's motion, Hornbeck argues that the information sought by Walker (referred to as "pay rate discovery" by Hornbeck), is "objectively irrelevant and disproportionate to the needs of the case" and therefore is not within the scope of discovery set forth in Federal Rule of Civil Procedure 26(b)(1). (Rec. doc. 43 at p. 1). Hornbeck offers numerous reasons for its position that the information sought by Walker is irrelevant. First, Hornbeck points out that Walker has never been a Hornbeck employee, which is undisputed. Hornbeck also argues that Walker has neither the United States Coast Guard ("USCG") training nor any sea-time experience in an engine-room position, both of which are prerequisites for obtaining the entry-level USCG credential necessary to qualify for any engine-room position. Finally, it argues that Walker's documented criminal and drug-use history would prohibit him from automatically obtaining the applicable USCG credential even if he were to satisfy the training and experience requirements.

In addition to arguing over the relevance of the subject discovery, Hornbeck also complains that it is disproportionate to the needs of the case because it would "increase the cost of this litigation (by requiring experts on both sides to address it) [and] decrease the efficiency of these proceedings (by requiring later motions to exclude the patently

inadmissible, wildly speculative evidence and/or the expert's reliance thereon). . . ." (*Id.* at p. 17).

## II. LAW AND ANALYSIS

This is a straightforward discovery dispute, the resolution of which is governed by FRCP 26(b)(1), which was recently amended. The Rule as amended now permits a party to:

> obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

F.R.C.P. 26(b)(1).

In the simplest terms, under Rule 26, the requested discovery must be both relevant <u>and</u> proportional. Because the record before this Court establishes that the information sought is not relevant to any claim or defense in the case, it is not necessary to determine whether it would be proportional if it <u>were</u> relevant.

Here, the Plaintiff seeks discovery from Hornbeck of its rates of pay for an entry-level engine-room position, as well as various more advanced engineering positions. It is undisputed that every engine-room position included in Walker's discovery request – including the entry-level one – requires a USCG Merchant Mariner Credential ("MMC") as a minimum prerequisite. (Rec. doc. 43 at p. 2, citing Hornbeck's training qualifications for engine-room personnel). It is also undisputed that Walker does not possess such a credential and has never applied for or taken any test or tests to obtain one. Moreover, Walker has a documented and admitted criminal and drug-abuse history that creates additional (and

possibly insurmountable) obstacles to obtaining an MMC under USCG regulations,[3] even if he otherwise possessed the requisite training and experience. (*Id.* at pp. 3-4 nn. 8-10).

Finally, and perhaps most importantly, it is undisputed that Walker has never been a Hornbeck employee, nor has he taken steps toward or expressed any interest in becoming one.

In the face of all this, Walker maintains that the requested discovery is "highly relevant" to his lost-earnings-capacity claim, because the evidence in the record indicates that he "had aspirations to become an engineer, was receiving special training from Hornbeck personnel in order to do so, and had the requisite skills and ambition to achieve upward mobility to an Engineer position." (Rec. doc. 35-1 at p. 3). Walker and his counsel believe that his aspirations, his ambitions and his observation of Hornbeck engine-room employees while employed as a rigger by Pioneer (albeit on a Hornbeck vessel)[4] are all sufficient to overcome Hornbeck's relevance objections and they cite two cases in support of this position: *Campbell v. Chet Morrison Contractors, LLC*, No. 11-CV-1358, 2012 WL 3028079 (W.D. La. July 24, 2012), *aff'd*, 532 Fed.Appx. 589 (5th Cir. 2013) and *Smith v. Blake Offshore LLC*, No. 07-CV-3873, 2009 WL 411466 (E.D. La. Feb. 18, 2009).

The Court has thoroughly reviewed these two cases and finds them unpersuasive here because, notwithstanding the very tenuous argument that Walker might, one day, perhaps obtain the training and credentialing necessary to become an engine-room employee, there is <u>no</u> evidence whatsoever that he would ever do so as an employee of

---

[3] *See* 46 C.F.R. § 10.209-213.
[4] The Court omits discussion of "requisite skills" here because there is no evidence in this record that tends to establish (1) what those requisite skills to achieve upward mobility as an engineer might be or (2) that Walker possessed any of them.

Hornbeck, and it is Hornbeck's records that are being sought here.  That Walker was allowed into the engine room by the Hornbeck master to observe Hornbeck employees work does not, without more, make those employees' rates of pay relevant in this case.  Indeed, when questioned at the hearing, Walker's counsel (correctly) conceded that, were Hornbeck not already a party to this case, a similar request for such information pursuant to a Rule 45 *subpoena duces tecum* would not be proper.

The Court finds support for its conclusions here in Chief Judge Engelhardt's decision in *Gilmore v. WWL-TV, Incorporated*, which was cited by Hornbeck and which the Court discussed at length with counsel at the hearing on this motion.  That case involved a decision on a motion in limine to exclude certain testimony in support of the plaintiff's lost earnings capacity claim as speculative.  A brief discussion of the facts of that case and the bases for that Court's decision is warranted here.

The Plaintiff in *Gilmore* suffered a foot injury that she claimed prevented her from realizing her dream of becoming a New York City ballerina.  *Gilmore*, No. 01-CV-3606, 2002 WL 31819135 (E.D. La. Dec. 12, 2002).  She sought "a loss of future earnings award based on the an assumption that [she] would in fact become a professional dancer in New York and earn a salary doing so until age 70" and intended to adduce the testimony of a vocational rehabilitation and an economic expert (as well as her own lay-opinion testimony) in support this effort.  *Id.* at *3.  The Defendant in the case moved to exclude both the expert and lay testimony based upon the highly speculative nature of Plaintiff's theory.

The trial court found the proffered expert testimony neither relevant nor reliable and premised that finding on the lack of any evidentiary connection between Gilmore's actual work and personal history and experience and the notion that she would have, but for her

foot injury, made "the quantum leap to prima ballerina or dancer with a company in New York, with a commensurate salary for the remainder of her worklife until age 70." *Id.* at *5. Judge Engelhardt found that:

> any reliable analysis or projection [of loss of earnings capacity] would have factored in the plaintiff's work history. Despite the fact that plaintiff has allegedly danced for nineteen years and received a scholarship offer to dance in New York, the plaintiff nonetheless resides in Chalmette, Louisiana, working as a legal secretary, and dancing as a Saintsation. There is no suggestion or innuendo that the plaintiff was ever swayed by any offer to actually go to New York in pursuit of such a career, or took any concrete steps toward picking up roots and transplanting herself in the dance venue of New York City. There is no evidence that suggests that the plaintiff was ever compensated with a salary for either performing ballet/dance or teaching ballet/dance except for her experience working seasonally as a Saintsation. <u>No matter how sincere, such aspiration alone does not provide a sufficient factual basis to support an expert opinion regarding money to be earned in such a speculative future.</u>[5]

*Id.* (emphasis added).

As noted above, at the hearing on the present motion, the *Gilmore* decision was discussed at length, and counsel for Walker made a laudable effort at convincing this Court that the scant evidentiary facts in this record somehow distinguish this case from *Gilmore* on the question whether Walker has taken some "concrete steps" toward actually becoming an engine-room-qualified employee. They do not.

This Court does not believe that expressing an interest, harboring an ambition, having designs to obtain training or being of sound body and mind to one day be an engine-room employee will, without more, ever be sufficient evidence to prove a claim for loss of earnings

---

[5] The Court also found, for similar reasons, that Plaintiff herself could not testify as to what she might have earned as a New York dancer. *Id.*

capacity as such an employee, particularly with a company for whom that person has never worked. If such expressions of interest are steps at all in the direction of actually achieving employment in these positions, they are most assuredly not "concrete steps," as noted by Judge Engelhardt in *Gilmore*. In that case, testimony – whether lay or expert – extrapolating future lost earnings capacity on the basis of the salary of a New York ballerina was not "grounded in the facts of the plaintiff's work history." *Id.* at *6. Surely, the same must be said here.

Walker did not (and still does not) possess the necessary USCG MMC to hold one of the subject positions. He has never even filled out an application to obtain those credentials. He does not have any of the requisite experience in a qualifying engine-room position. He has numerous criminal convictions and positive drug tests (including post-accident) that could very well disqualify him from obtaining such credentials, even if he were adequately trained and had applied for them. And he has never worked for Hornbeck – not an insignificant fact.

Based on the record before the Court, there is no scenario conceivable to this Court whereby the evidence Walker seeks from Hornbeck could ever be presented to the finder of fact in support of his lost earnings capacity claim. It therefore cannot be relevant, which means it is not discoverable under Rule 26.

There may be some scenario whereby Walker himself can testify that his injuries at the hands of these defendants somehow deprived him of his dream or ambition to advance to an engine-room position for some employer and a jury may place some value on that alleged loss. But to allow the discovery of the pay-rate information requested here from Hornbeck, which will undoubtedly be used to arm an expert to include that information in a

report and/or testify that it has bearing on the value of Walker's lost earnings capacity claim would, on this record, eviscerate the limits on the scope of discovery set forth in Rule 26.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." **Fed. R. Evid.** 401. For the reasons set forth above, the information requested by Walker that is subject of this motion does not make any fact of consequence to the determination of the action more or less probable. Because it does not meet the definition of relevant evidence, the Court need not determine whether it is proportional to the needs of the case.

For the foregoing reasons, the motion to compel is denied.

New Orleans, Louisiana, this 30th day of March, 2016.

  
_____  
MICHAEL B. NORTH  
UNITED STATES MAGISTRATE JUDGE